**GRIESE–TRAYLOR CORPORATION, a Florida Corporation, Plaintiff-Appellant,**

**v.**

**The FIRST NATIONAL BANK OF BIRMINGHAM, a National Banking Association, et al., Defendants-Appellees.**

No. 76–2050.

United States Court of Appeals, Fifth Circuit.

May 8, 1978.

---

Lester M. Bridgeman, Nancy Pyeatt, Washington, D. C., for plaintiff-appellant.

Wm. G. Somerville, Jr., Charles C. Pinckney, Birmingham, Ala., for Stoll, et al.

Harold R. Schmidt, H. Yale Gutnick, Pittsburgh, Pa., for Consol Coal, etc.

Warren B. Lightfoot, Alan K. Zeigler, Birmingham, Ala., for Consol Coal Co.

N. Lee Cooper, Donald J. Stewart, Birmingham, Ala., for First Nat. Bank.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Griese-Traylor Corporation, plaintiff below, appeals from the summary judgment in favor of the three defendants, The First National Bank of Birmingham (the "Bank"), Consolidation Coal Company ("Consol"), and Stoll & Stoll, Inc. (the "Stolls"). The lawsuit arose out of competing negotiations by Griese-Traylor and the Stolls to acquire an option on certain mineral interests in Tennessee from the Alabama Bank. Griese-Traylor alleges that after an oral agreement had been reached, the Bank broke its promise and entered into a contract with the Stolls. The complaint seeks compensatory damages from the Bank for breach of contract (Count V), and compensatory and punitive damages from all three defendants for intentional interference with Griese-Traylor's contractual (Count IV) and business (Count III) relations and for conspiracy to tortiously interfere with business (Count I) and contractual (Count II) relations. We affirm the district court's grant of summary judgment on all counts.

I. *Background*

The facts, as derived during extensive pretrial discovery and viewed in the light most favorable to Griese-Traylor, are as follows:

In October 1973, plaintiff Griese-Traylor learned from Henry Long, a Bank trust officer, of the possible availability for purchase of mineral rights in a 15,875 acre tract of land in Tennessee. Griese-Traylor offered to enter into a one-year option agreement for acquisition of the mineral rights, at an option price of $1.50 per acre and a purchase price of $15 per acre. In January of 1974, plaintiff had its attorney send the Bank a proposed option contract agreement. Long knew that Griese-Traylor proposed to sell part of its option rights to AMAX Coal Company, as it had in prior transactions with the Bank.

Around the same time, the Stolls learned that the mineral rights were for sale. The Stolls offered to buy the rights for Consol. Consol took no action on the offer until February 1974, when it learned that AMAX, its competitor, was acquiring mineral interests in property around the Bank's property. At that point, Consol entered into an agreement with the Stolls, which called for the Stolls to purchase the mineral rights from the Bank and immediately lease them to Consol for a profit. The Stolls began negotiating with the Bank. On February 18, 1974, the Stolls presented a check for $40,000 as earnest money and a conditional sales contract (which the Bank had told the Stolls it preferred to an option contract), calling for $2.50 per acre for a one-year option and $20 per acre as the purchase price.

Long told Griese-Traylor that he had a higher offer than Griese-Traylor's offer, and invited plaintiff to make a better offer. On February 26, Long talked with plaintiff on the telephone and Griese-Traylor offered a one-year option price of $4 per acre and purchase price of $25 per acre. This proposal was subject only to the approval of AMAX, and it was agreed that plaintiff would notify the Bank of AMAX's decision by March 22. Long accepted this oral offer with the condition precedent. This oral option contract is the crux of this case.

On March 18, Long told Traylor that he would mail him an acceptable form of contract. This was in the form of a conditional sales contract, rather than an option. The

contract contained many blanks and some price figures different from those that had been discussed, so plaintiff could not have just signed and returned the document to the Bank. On March 22, Traylor called Long to say that AMAX had approved, thus satisfying the condition precedent. Long said he would check "upstairs" to see how plaintiff would have to deliver the $64,000 option price. When Traylor called back, Long told him the Bank had another offer (from the Stolls) which included a check as earnest money, and therefore, unless plaintiff could get a check to him that day, the Bank would accept the Stoll offer instead. It was impossible for plaintiff to get a check to the Bank on that day. The Bank entered into a written contract for the sale of the mineral option rights to the Stolls that same day, March 22.

## II. Breach of Contract (Count V)

The district court correctly held that the oral contract between Griese-Traylor and the Bank is unenforceable because the statute of frauds requires option contracts for the sale of land to be in writing. This is true, regardless of whether the Tennessee or Alabama statute of frauds applies.

Since this is a diversity case, the federal district court is required to follow the conflict of laws rules of the state in which it sits, here Alabama. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496–497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Alabama generally judges the validity of a contract by the law of the state where the contract was entered into or, where the contract is to be performed in another jurisdiction, by the law of the state of performance. *J. R. Watkins Co. v. Hill,* 214 Ala. 507, 108 So. 244, 245 (1926). Where land is concerned, however, Alabama appears to apply the "*lex loci rei sitae*" rule: all matters involving title to land (such as descent, alienation and transfer of property) are governed by the law of the state where the real property is located. *See Hall v. Proctor,* 242 Ala. 636, 7 So.2d 764, 768 (1942); *Phillips v. Phillips,* 213 Ala. 27, 104 So. 234, 236 (1925); *Nelson v. Goree's Adm'r,* 34 Ala.

565, 579 (1859). Griese-Traylor contends this is an executory contract, to be performed in Alabama, and hence is governed by Alabama law and the Alabama statute of frauds. The district court found the option contract involves an interest in Tennessee land, and thus covered by the Tennessee statute of frauds.

Whether the Alabama or Tennessee statute of frauds is applied, however, the result will be the same. Under both states' statutes of frauds, an oral option contract involving realty is unenforceable.

The Alabama statute of frauds provides that "every contract for the sale of lands, tenements, or hereditaments, or any interest therein" is void unless such agreement is in writing. Ala.Code tit. 20, § 3(5). The Tennessee statute, Tenn.Code Ann. § 23–201(4), is to the same effect. In both states, a contract for the sale of a mineral interest is a contract for the sale of an interest in lands, tenements, or hereditaments, and thus covered by the statute. *Riddle v. Brown,* 20 Ala. 412, 417–418 (1852); *Price v. Tennessee Products & Chemical Corp.,* 53 Tenn.App. 624, 384 S.W.2d 301 (1964). The only question then is how each state treats an oral option contract for the purchase of land.

The district court ruled that Tennessee, if presented with the question, would follow the majority of decisions which hold that an option to buy real property comes within the proscription of the statute of frauds. *See* 37 C.J.S. *Statute of Frauds* § 117. Griese-Traylor has not, before this Court or below, challenged the district court's interpretation of Tennessee law.

Griese-Traylor contends, however, that Alabama would not follow the majority rule. In plaintiff's view, an oral option on realty is not subject to the Alabama statute of frauds, since an option does not create an interest in land under Alabama law. In support of its position, Griese-Traylor cites *Fullenwider v. Rowan,* 136 Ala. 287, 34 So. 975 (1903), which says that an option "is not an estate in land and an option is not a contract of sale." 34 So. at 979. When the language Griese-Traylor quotes from *Ful-*

*lenwider* is put in context, it is clearly inapposite to the present situation. In *Fullenwider,* defendants gave plaintiff Fullenwider a *written* option to buy their land for $19,000 within 60 days. Fullenwider paid $500 for the option. Within the option period, he paid another $7,500, and a second written contract was drawn up, giving Fullenwider a year to pay the remaining $12,000 purchase price plus interest. Plaintiff did not pay the $12,000 within the year, but did tender it soon thereafter. Defendants contended that the second contract was also an option, in which time is of the essence, and the plaintiff not having timely exercised it, the defendants could keep all moneys paid under it. The court decided that the second contract exercised the first option and was itself an agreement to sell lands in which time was not of the essence, so that plaintiff was entitled to the property on payment of the full purchase price. It was in this context that the court differentiated among the three possible transactions in land:

A transaction between two, may be, (1) a sale of lands; (2) an agreement to sell lands, or, (3) what is generally called an option. . . . "The first is an actual transfer of the title from the grantor to the grantee by appropriate instrument of conveyance; the second is a contract to be performed in the future, and if fulfilled, results in a sale; it is preliminary to the sale, and is not a sale. . . . The third, an option, originally is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property agrees with another, that he shall have the right to buy the property at a fixed price within a time certain. He does not sell his land; he does not then agree to sell it; but he does then sell something, viz.: the right or privilege to buy at the option or election of the other party. The second party gets in praesenti not lands, or an agreement that he shall have lands, but he does get something of value, that is the right to call for and receive lands if he elects. The owner parts with his right to sell his lands (except to the second party) for a limited period. The second party receives this right, or rather from his point of view, he receives the right to elect to buy. . . ."

. . . [An option] is not an estate in land and an option is not a contract of sale. . . .

34 So. at 979. Thus the case does not help us to determine the validity of an *oral* option under the statute of frauds. In addition, the statute of frauds requires contracts for any *"interest"* in land to be in writing. Thus, even if the language in *Fullenwider* that an option "is not an estate in land" is taken at face value, it would still leave open the issue of whether an option creates an "interest" in land.

*Fullenwider* was subsequently cited by the Alabama Supreme Court in *Neely v. Denton,* 260 Ala. 26, 68 So.2d 537 (1953), a case which strongly implies that options for the sale of land are within the statute of frauds. In *Neely,* defendant had been given a written option to purchase land signed only by the optionor-plaintiff, but not by defendant. Plaintiff sued for specific performance, alleging that defendant "accepted" the option, agreed to pay the purchase price, took possession, but did not pay. Defendant demurred on the basis of the statute of frauds, since he had not signed the option. The trial court overruled defendant's demurrer, and the Alabama Supreme Court affirmed. Since the plaintiff alleged that defendant "accepted" the option, the court placed the burden on defendant to show that the acceptance was not in such a form as to bind him, which required an answer. The court noted that if *only* the written option contract had been alleged in the complaint, not the acceptance, the demurrer would have been good, thus indicating that an option for the sale of land must satisfy the statute of frauds to be enforceable. *See also Dozier v. Troy Drive-In-Theatres,* 265 Ala. 93, 89 So.2d 537 (1956).

The indication in *Neely* is consistent with Alabama decisions in the analogous area of mortgage redemptions. By statute, Alabama gives a two-year period to redeem a foreclosed mortgage. The parties may

agree to allow redemptions after that statutory period, but such an agreement must be in writing:

> An agreement to allow redemptions after the statutory period has expired is an agreement to convey an interest in land and is within the provisions of the statute of fraud.

*Thompson v. Suttle,* 244 Ala. 687, 15 So.2d 590 (1943). The court reached the same conclusion in *Holman v. Hall,* 248 Ala. 541, 28 So.2d 629, 632 (1946), where it also noted that the statutory right of redemption was "in essence an option, which is within the statute of frauds."

From these cases, it appears that contrary to plaintiff's argument, Alabama, as well as Tennessee, follows the majority view that options for the sale of an interest in land must be in writing to be enforceable. Since the contract between Griese-Traylor and the Bank was not in writing, it is unenforceable.

Before the district court and in its brief on appeal, Griese-Traylor called its oral agreement with the Bank either an option or an oral agreement to enter into a written option contract. The alternative characterization would not change the result here, for Alabama law is clear that if the contract must be in writing, an agreement to enter into such a contract must also be in writing. *Alabama Mineral Land Co. v. Jackson,* 121 Ala. 172, 25 So. 709, 711 (1899). Griese-Traylor does not contend the result would differ under Tennessee law.

The Bank is, therefore, not liable for breach of contract. The district court was correct in granting summary judgment to the Bank on Count V.

### III. Intentional Interference with Contractual Relations (Count IV)

The district court properly granted summary judgment in favor of defendants on the tort claim for intentional interference with contractual relations contained in Count IV of the complaint.

█ In tort cases under the Alabama choice of law rule, the law of the place where the wrong was committed applies. *See, e. g., Pound v. Gaulding,* 237 Ala. 387, 187 So. 468, 471 (1939).

This Court recently examined the applicable Alabama law and concluded that proof of fraud, force, or coercion is an essential element of proof in an action for tortious interference with contracts:

> We have independently reviewed every discoverable Alabama case dealing with tortious interference with contracts. Our research leads us to conclude that in that jurisdiction there is no action for tortious interference with contract in the absence of fraud, force, or some form of coercion. See, e. g., *Erswell v. Ford,* 208 Ala. 101, 94 So. 67 (1922); *Sparks v. McCrary,* 156 Ala. 382, 47 So. 332 (1908); *United States Fidelity and Guaranty Company v. Millonas,* 206 Ala. 147, 89 So. 732 (1921); *McCluskey v. Steele,* 18 Ala.App. 31, 88 So. 367 (1920). But see, also, *Alcazar Amusement Company v. Mudd & Colley Amusement Company,* 204 Ala. 509, 86 So. 209 (1920), and *Louisiana Oil Corporation v. Green,* 230 Ala. 470, 161 So. 479 (1935), in which the latter case declared that the former was "not authoritative".

*Volz v. Liberty Mutual Insurance Co.,* 498 F.2d 659, 663 (5th Cir. 1974).

Griese-Traylor questions the holding in *Volz,* contending that it conflicts not with any subsequent Alabama cases, but with a prior decision of this Court, *Kelite Products, Inc. v. Binzel,* 224 F.2d 131 (5th Cir. 1955). However, even if these decisions did conflict, which is doubtful, the later *Volz* case contains the interpretation of Alabama law to be applied in this Circuit. Just this term, in fact, the Court cited *Volz's* fraud, force, or coercion requirement as representing Alabama law. *Hennessey v. National Collegiate Athletic Ass'n,* 564 F.2d 1136, 1143 (5th Cir. 1977).

█ The evidence simply shows that Griese-Traylor and the Stolls were competing with each other to acquire the mineral rights from the Bank. Since the district court found that "there is a complete absence of evidence from which one might infer 'fraud, force, or some form of coer-

cion,'" the grant of summary judgment for defendants on Count IV was correct.

### IV. *Intentional Interference with Business Relations (Count III)*

Under Alabama law an affirmative or threatened act of interference, as distinguished from a refusal or failure to carry out a particular promise, is an essential element of a cause of action for tortious interference with business relations. *Alabama Power Co. v. Thompson,* 278 Ala. 367, 178 So.2d 525, 528 (1965). *See also Thompson v. Allstate Insurance Co.,* 476 F.2d 746 (5th Cir. 1973). Griese-Traylor recognizes the need to prove an affirmative act of interference, and in its brief alleges the Bank's contract with the Stolls to be such an affirmative act.

■ It is thus obvious that defendant Consol was entitled to summary judgment on Count III, since Griese-Traylor does not allege that Consol engaged in any affirmative act of interference. Consol was not a party to the Stolls' contract with the Bank, nor is it alleged that the Stolls acted as Consol's agent.

■ The Bank likewise cannot be held liable for interference with Griese-Traylor's business relations with the Bank itself. The Bank merely refused to carry out an unenforceable agreement. Plaintiff cannot convert the Bank's failure to carry out an unenforceable contract into a valid tort claim by calling it an interference with business relations. Nor can the Bank be held liable for interfering with Griese-Traylor's business relations with AMAX, since any such interference was indirect and incidental. Any interference with the Griese-Traylor/AMAX relationship was caused by Griese-Traylor's inability to acquire the mineral rights from the Bank.

■ Summary judgment was also proper as to the Stolls. In Alabama, a defendant will not be liable where it acted for a legitimate economic reason. *Bona fide* business competition is a justification for intentional interference with a competitor's business. *Thompson v. Allstate Insurance Co.,* 476

F.2d 746, 748–749 (5th Cir. 1973); *Kelite Products, Inc. v. Binzel,* 224 F.2d 131, 139–140 (5th Cir. 1955); *Beasley-Bennett Electric Co. v. Gulf Coast Chapter, Nat'l Electrical Contractors Ass'n,* 273 Ala. 32, 134 So.2d 427 (1961) ("'Competition in business, even though carried to the extent of ruining a rival, constitutes justifiable interference in another's business relations, and is not actionable, so long as it is carried on in furtherance of one's own interests.'" 134 So.2d at 429). Of course, if either the objective sought is illegal, or the means used are improper, the defense is lost. *See Kelite Products, Inc. v. Binzel,* 224 F.2d 131, 139–140 & nn. 8–9 (5th Cir. 1955), and Alabama cases cited therein. Neither of these factors are present here.

The district court found that "the undisputed evidence is clear that [the Stolls] acted for legitimate economic reasons and were motivated by genuine competitive interests." The Stolls were competing for the purchase of mineral rights to be used in connection with its legitimate business, and in fact did purchase such rights. Summary judgment for the Stolls, therefore, was proper.

Thus all three defendants were entitled to summary judgment on Count III.

### V. *Conspiracy to Interfere with Business and Contractual Relations (Counts I and II)*

Under Alabama law the gist of an action for conspiracy to interfere with business and contractual relations is not the conspiracy itself, which furnishes no cause of action, but the alleged wrong committed by the conspirators. *O'Dell v. State,* 270 Ala. 236, 117 So.2d 164, 168 (1959). In order for there to be liability for conspiracy, there must be an "actionable wrong." *Stuart Construction Co. v. Vulcan Life Insurance Co.,* 291 Ala. 650, 285 So.2d 920, 923 (1973).

■ Since the defendants are not liable for interference with Griese-Traylor's contractual or business relations, there are no "actionable wrongs" to support the conspiracy counts. Summary judgment for de-

fendants on Counts I and II was therefore appropriate.

### VI. *Conclusion*

Viewing the evidence in the light most favorable to Griese-Traylor under the applicable Alabama and Tennessee law, we affirm the summary judgment in favor of defendants on all five counts of the complaint.

AFFIRMED.