982 So.2d 1067 (2007)
JOHNNY RAY SPORTS, INC., and Johnny Ray, L.L.C.
v.
WACHOVIA BANK, successor to SouthTrust Bank.
1060306.
Supreme Court of Alabama.
August 17, 2007.
Rehearing Denied October 26, 2007.
*1069 Philip E. Miles, Gadsden, for appellants.
Glenn E. Glover of Burr & Forman, LLP, Birmingham, for appellee.
STUART, Justice.
Johnny Ray Sports, Inc., and Johnny Ray, L.L.C. ("the Johnny Ray companies"), appeal the summary judgment in favor of Wachovia Bank, the successor by merger to SouthTrust Bank, on their breach-of-contract, fraud, and negligence and/or wantonness counterclaims. We affirm.

I.
On July 30, 1997, Johnny Ray Sports, a Gadsden-based manufacturer of electronics mounts and brackets, executed two promissory notes with a combined principal of $1,232,110 in favor of SouthTrust Bank, the predecessor to Wachovia Bank. (For convenience, all future references to SouthTrust Bank will be to "Wachovia.") The promissory notes were secured by a mortgage on real property in Etowah County ("the Gadsden property") and by a security agreement granting Wachovia an interest in the inventory and equipment of Johnny Ray Sports.
On September 3, 2003, Johnny Ray Sports filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Alabama. Upon the filing of the petition, an automatic stay immediately went into effect halting all efforts by creditors of Johnny Ray Sports to collect on the unpaid debts of Johnny Ray Sports. 11 U.S.C. § 362.
On September 24, 2003, Wachovia moved the bankruptcy court to lift the automatic stay so that it could foreclose on the Gadsden property and certain equipment located there. Wachovia and Johnny Ray Sports thereafter reached an agreement under which Johnny Ray Sports would not oppose the lifting of the automatic stay and, once the stay was lifted, Wachovia would be allowed to take possession of and to foreclose on the Gadsden property and the equipment located there. Johnny Ray Sports alleges that, as consideration for not opposing the lifting of the automatic stay, Wachovia agreed: 1) to allow certain pieces of equipment to be moved from the Gadsden property to another facility in Rainbow City ("the Rainbow City facility"); and 2) to have the equipment being moved to the Rainbow City facility appraised and to give Johnny Ray Sports the opportunity to purchase the equipment at fair market value. Wachovia acknowledges that it and Johnny Ray Sports reached an agreement to lift the automatic stay, but it disputes that it ever agreed to the terms Johnny Ray Sports now claims the parties agreed to.
*1070 On December 8, 2003, the bankruptcy court dismissed Johnny Ray Sports' bankruptcy case. On December 29, 2003, Wachovia foreclosed on the Gadsden property. At the auction for the sale of the property, Wachovia purchased the property with a successful bid of $450,000 in the form of a credit on the indebtedness owed to it by Johnny Ray Sports. By agreement, Johnny Ray Sports continued to operate out of the Gadsden property for several months; however, at some date in March or April 2004, Johnny Ray Sports moved some equipment  which Johnny Ray Sports claimed Wachovia had earlier agreed to allow it to remove  from the Gadsden property to the Rainbow City facility (hereinafter referred to as "the removed equipment"). Although it was not officially incorporated until March 2005, the entity that would become Johnny Ray, L.L.C., operated out of the Rainbow City facility after the removed equipment was moved there, producing the same types of products previously produced by Johnny Ray Sports.
On August 18, 2005, Wachovia sued the Johnny Ray companies in the Etowah Circuit Court, seeking to recover the balance owed on the promissory notes and stating a detinue claim seeking recovery of the removed equipment, which was in the possession of Johnny Ray, L.L.C., at the Rainbow City facility. Wachovia simultaneously moved the trial court to issue a writ of seizure allowing it to take possession of the removed equipment immediately.
On September 21, 2005, the Johnny Ray companies answered the complaint and asserted their own counterclaims against Wachovia. Specifically, the Johnny Ray companies asserted: 1) a breach-of-contract claim alleging that Wachovia had failed to abide by its agreement to have the removed equipment appraised and to give Johnny Ray Sports the opportunity to purchase it at its fair market value; 2) a fraud claim alleging that Wachovia had fraudulently induced Johnny Ray Sports to agree not to oppose the lifting of the automatic stay in the bankruptcy proceeding by promising it the opportunity to purchase the removed equipment at its fair market value; and 3) a negligence and/or wantonness claim alleging that Wachovia had negligently or wantonly refused a third party's $1 million offer to buy the Gadsden property even though that offer, if accepted, would have satisfied Johnny Ray Sports' indebtedness to Wachovia.
Concurrent with the filing of their answer and counterclaims, the Johnny Ray companies also filed their response opposing Wachovia's motion for the writ of seizure. On November 17, 2005, following multiple hearings on the issue, the trial court issued the writ of seizure Wachovia had requested. Wachovia subsequently requested that its detinue claim be dismissed and, on September 30, 2006, the trial court granted that request.
On March 10, 2006, Wachovia moved for a summary judgment on all the counterclaims asserted by the Johnny Ray companies. On August 16, 2006, after the Johnny Ray companies filed their response and after oral argument, the trial court granted Wachovia's motion and entered a summary judgment against the Johnny Ray companies and in favor of Wachovia. The Johnny Ray companies' subsequent motion to alter, amend, or vacate the judgment was denied, and, on November 13, 2006, the Johnny Ray companies filed their notice of appeal to this Court.[1]

*1071 II.
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce `substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala.Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004). Thus, we review each of the Johnny Ray companies' three counterclaims to determine if, when the evidence is viewed in the light most favorable to them, a genuine issue of material fact exists so as to make a judgment as a matter of law for Wachovia on those counterclaims inappropriate.

III.
We first consider the Johnny Ray companies' breach-of-contract counterclaim. The trial court's order did not state its basis for entering the summary judgment in favor of Wachovia on the breach-of-contract counterclaim; however, Wachovia had argued that it was entitled to summary judgment on that counterclaim for three reasons: (1) there is, it argued, overwhelming evidence that the alleged oral contract the Johnny Ray companies' breach-of-contract counterclaim is based on does not exist; (2) the breach-of-contract counterclaim, it argued, is barred by Alabama's Statute of Frauds relating to the sale of goods, § 7-2-201(1), Ala.Code 1975; and (3) the breach-of-contract counterclaim, it argued, is barred by the doctrine of judicial estoppel. Because we agree that the breach-of-contract counterclaim is barred by the Statute of Frauds, we need not consider the other arguments.
Alabama's Statute of Frauds as it relates to the sale of goods, § 7-2-201(1), states, in relevant part:
"Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."
Wachovia notes that the president of Johnny Ray Sports, John Nunnelee, has conceded under oath that the removed equipment is worth more than $500, and Wachovia argues that Johnny Ray Sports' failure to memorialize the alleged agreement in writing is accordingly fatal to its claim. The Johnny Ray companies, however, argue that the Statute of Frauds does not apply in this case because, they say, the alleged agreement was not, in fact, a contract for the sale of goods; rather, *1072 they argue, it was a right of first refusal.
Although this Court has not had opportunity to consider whether rights of first refusal are covered by the Statute of Frauds, some courts in other jurisdictions have considered the issue and held that such contracts are outside the operation of the statute. See, e.g., Madison Indus., Inc. v. Eastman Kodak Co., 243 N.J.Super. 578, 587, 581 A.2d 85, 90 (App.Div. 1990) (holding that a right of first refusal was not a contract for sale subject to the Statute of Frauds because "the requisite elements of a `sale' are absent"), and Unlimited Equip. Lines, Inc. v. Graphic Arts Ctr., Inc., 889 S.W.2d 926, 934 (Mo.Ct.App. 1994) (holding that "[a] first right of refusal is not a contract of purchase and sale" and that the Statute of Frauds accordingly "does not apply to the first right of refusal provision standing alone"). Regardless of those decisions, however, we need not address this issue because the alleged oral agreement between Johnny Ray Sports and Wachovia was not a right of first refusal; rather, it was an option contract.
Although the Johnny Ray companies have labeled the alleged agreement as a right of first refusal in their briefs to this Court, we are not bound by that characterization, and we evaluate the agreement according to its own terms. That the agreement was oral makes doing so more difficult; however, Johnny Ray Sports described the alleged agreement as follows in its counterclaim:
"1. Following September 24, 2003, [Wachovia] and [Johnny Ray Sports] entered into an agreement, whereby [Johnny Ray Sports] would not oppose the lifting of the automatic stay against it as [Johnny Ray Sports] was under Chapter 11 protection in exchange for the removal of two fixtured machines and certain equipment from [Johnny Ray Sports'] location to the location of Johnny Ray, L.L.C. . . .
"2. Based on that agreement, said equipment was moved to the location of Johnny Ray, L.L.C., with the understanding that [Johnny Ray Sports] could purchase the fixtures which then became equipment and re-fixtured and certain operational equipment at a fair market value or, in the alternative, if the foreclosed property sold in an amount greater than the debt owed to [Wachovia] by [Johnny Ray Sports], then the price of said fixtures and equipment would be paid for as the debt would be satisfied and any additional amounts remitted to [Johnny Ray Sports]."
Elsewhere in the counterclaim, the Johnny Ray companies state that the fair market value of the removed equipment would be determined "through the use of an appraiser or appraisers." Thus, the Johnny Ray companies are alleging, in essence, that Johnny Ray Sports contracted for the right to purchase the removed equipment at some time in the future at an agreed upon, though unspecified, price (i.e., fair market value). In other words, Johnny Ray Sports held an option to purchase the equipment once an appraiser determined its fair market value.
That this was an option rather than a right of first refusal is evidenced by the very fact that the Johnny Ray companies have filed a breach-of-contract counterclaim. That counterclaim is premised on the allegation that Wachovia was required to offer the equipment for sale to Johnny Ray Sports. If the contract were a mere right of first refusal, Wachovia would have had no such obligation. A right of first refusal would have allowed Wachovia to keep the equipment for its own account as long as it desired to do so and would have required Wachovia to offer it to Johnny Ray Sports only when Wachovia decided to *1073 sell the equipment. It would therefore have been impossible for Wachovia to breach the contract as alleged because, if it were a true right of first refusal, Wachovia would be under no obligation to sell.
Moreover, if the contract were a true right of first refusal, Wachovia could have required Johnny Ray Sports to match the price offered by a third-party buyer even if that price was higher than the appraised value. However, under the terms of the agreement as alleged by Johnny Ray Sports, Johnny Ray Sports had the first right to purchase the equipment at fair market value, as determined by the appraisers, even if another party might have been willing to pay more than that appraised value. For these reasons, the alleged agreement must be considered an option contract rather than a right of first refusal.
The question therefore becomes whether an option contract contemplating the sale of goods valued at more than $500 is a contract that must be in writing to satisfy the Statute of Frauds. We have not considered this exact issue previously; however, existing caselaw from similar cases leads us to answer that question in the affirmative. In Foy v. Foy, 484 So.2d 439, 442 (Ala.1986), this Court considered an option contract that gave one party the right to purchase a parcel of real property. Citing Griese-Traylor Corp. v. First National Bank of Birmingham, 572 F.2d 1039 (5th Cir.1978), we agreed with the trial court that such an option contract "falls within the Statute [of Frauds]."[2] Moreover, as the Court of Civil Appeals has stated, there is "no distinction made as between real and personal property transactions so far as the statute of frauds is concerned. . . ." Blowers v. First National Bank of Huntsville, 45 Ala.App. 485, 489, 232 So.2d 666, 670 (1970). The Supreme Court of Appeals of West Virginia has also considered whether options for the sale of goods and options on real property should be treated differently, stating:
"In principle, insofar as this issue is concerned, no significant difference is discernible between an option to purchase goods or corporate stock and an option to purchase real estate. It has been widely held that an option to purchase real estate is a unilateral contract of sale and must be in writing in order to comply with the Statute of Frauds. Pigeon v. Hatheway, 156 Conn. 175, 239 A.2d 523 (1968); Bratt v. Peterson, 31 Wis.2d 447, 143 N.W.2d 538 (1966); McGuirk v. Ward, 115 Vt. 221, 55 A.2d 610 (1947); Neely v. Sheppard, 185 Ga. 771, 196 S.E. 452 (1938). Therefore, whether it be an option for the sale of real estate or of goods, merchandise or corporate stocks, said option creates a contract of sale and is subject to the requirements of the Statute of Frauds."
Quinn v. Beverages of West Virginia, Inc., 159 W.Va. 571, 577-78, 224 S.E.2d 894, 898 (1976). For these reasons, we conclude that the alleged oral agreement between Wachovia and Johnny Ray Sports, purporting to give Johnny Ray Sports the option to purchase the removed equipment, was subject to the Statute of Frauds and is accordingly void. The summary judgment in favor of Wachovia on the Johnny Ray companies' breach-of-contract *1074 counterclaim is therefore due to be affirmed.
We next consider the summary judgment entered in favor of Wachovia on the Johnny Ray companies' fraud counterclaim. As it did with the previously discussed claim, Wachovia argues that the summary judgment on this counterclaim was proper based on the Statute of Frauds. In Bruce v. Cole, 854 So.2d 47, 58 (Ala.2003), this Court overruled a previous line of cases and held that "an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud." We have already held that the alleged agreement in this case is void under the Statute of Frauds; therefore, under the authority of Bruce, we also hold that the trial court's summary judgment in favor of Wachovia on the Johnny Ray companies' fraud counterclaim is proper.
Finally, we consider the summary judgment on the Johnny Ray companies' counterclaim alleging that Wachovia negligently and/or wantonly refused a third party's $1 million offer to buy the Gadsden property even though that offer, if accepted, would have satisfied Johnny Ray Sports' indebtedness to Wachovia. This counterclaim hinges on whether a mortgagee that has purchased mortgaged property at a foreclosure sale has a duty to the mortgagor to accept a third party's subsequent offer to purchase the same property if that offer will extinguish the mortgagor's debt and is received within the one-year statutory redemption period. The Johnny Ray companies argue that such a duty exists; Wachovia argues that it does not.
"Whether a party owes a duty to another is strictly a question of law." RaCON, Inc. v. Tuscaloosa County, 953 So.2d 321, 334 (Ala.2006) (citing Taylor v. Smith, 892 So.2d 887, 891 (Ala.2004)). In support of their argument that Wachovia owed Johnny Ray Sports the claimed duty, the Johnny Ray companies rely primarily on Springer v. Baldwin County Federal Savings Bank, 562 So.2d 138 (Ala.1989). The issue in Springer was "whether a mortgagee who purchases the mortgaged property at a foreclosure sale and then resells it to a third party during the statutory redemption period is required to apply the profit . . . to the reduction of the mortgagor's debt." 562 So.2d at 139. This Court noted that "a mortgagee is, in a sense, a trustee for the mortgagor, and is charged with the `duty of fairness and good faith in its execution to the end that the mortgagor's property may be disposed of to his pecuniary advantage in the satisfaction of his debt'" and ultimately answered the question in the affirmative. 562 So.2d at 139 (quoting J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 455, 212 So.2d 831, 843 (1968)). The Johnny Ray companies argue that, by extension, this same "duty of fairness and good faith" requires a mortgagee to accept an offer made within the statutory redemption period if that offer would extinguish the mortgagor's debt. We disagree.
In Springer, the mortgagee foreclosed on the mortgaged property and then conducted a foreclosure sale at which it purchased the property with a high bid of $88,200. Just three days later, the mortgagee resold the property to a third party for $99,000. In concluding that the mortgagee had the duty to apply the profit to reduce the mortgagor's debt, this Court stated:
"Under § 6-5-253(c) (Cum.Supp. 1988), the `purchaser' is entitled to `all rents paid or accrued . . . to the date of the redemption.'[[3]] In this case, we are *1075 concerned with more than `rents.' A resale of the property after foreclosure and during the redemption period is more analogous to the situations contemplated by § 6-5-253(d) (Cum.Supp. 1988), whereby the mortgagor is entitled to receive a credit on the debt when timber off the property is cut and sold; when oil, gas, or minerals, etc., are taken from the property and sold; or when buildings on the property are destroyed or diminished in value. In Bartlett v. Jenkins, 213 Ala. 510, 105 So. 654 (1925), this Court recognized that the mortgagee's trustee relationship with the mortgagor continues in some instances after foreclosure and held that when mortgaged property is sold at a foreclosure sale `[t]he mortgagee becomes a trustee for the mortgagor, as to the surplus received.' Id., 213 Ala. at 511, 105 So. at 655 (citation omitted). The profit realized by the mortgagee upon resale of foreclosed property during the redemption period is derived from the value of the property itself. The mortgagee, as trustee for the mortgagor, is obligated to apply that profit realized after foreclosure and during the redemption period to the reduction of the mortgagor's debt, no less than when timber, oil, gas, or minerals are taken and sold. For the mortgagee to be allowed to do otherwise would violate the duty owed the mortgagor." 562 So.2d at 139-40. Thus, in Springer, this Court reached its decision by drawing an analogy to § 6-5-253(d), Ala.Code 1975, which provides that, if a mortgagor decides to redeem foreclosed property, that mortgagor is to entitled to the profit received if any timber, oil, gas, or minerals have been harvested or extracted from the mortgaged property and sold during the statutory redemption period. This is so, this Court reasoned, because the profit realized by the mortgagee upon resale of foreclosed property during the redemption period is, like the profit received from timber, oil, gas, or mineral sales, "derived from the value of the property itself." Springer, 562 So.2d at 140.
However, although § 6-5-253 clearly indicates that the purchaser of a foreclosed property has the authority to harvest and sell timber or to sell oil, gas, or minerals extracted from the property  even though such acts may ultimately inure to the mortgagor's benefit  there is no requirement in that statute or any other statute, or in our caselaw, that would require the purchaser to sell such timber or oil, gas, or minerals. The decision whether to do so is left to the discretion of the *1076 purchaser. Similarly, we hold that a mortgagee that has purchased mortgaged property at a foreclosure sale has no duty to resell the property within the one-year statutory redemption period, even if the opportunity for such a sale is presented and even if the sale would extinguish the mortgagor's debt.
Practically speaking, there is no need to impose such a duty upon the purchaser because the mortgagor already has a statutory right of redemption for one year after foreclosure. Thus, if a market for a particular parcel of property develops within the one-year period after that parcel is sold in foreclosure, the mortgagor may exercise its right of redemption to reacquire title to the property, and then sell the property on the open market for whatever price the market allows. Not only does the mortgagor in this situation directly receive the benefit of any appreciation in the property's value, but issues that might arise if the mortgagee-purchaser was required to sell the property for the mortgagor's account are avoided.[4]
Because we have held that a mortgagee that has purchased mortgaged property at a foreclosure sale has no duty to the mortgagor to accept a third party's subsequent offer to purchase the same property even if that offer is received within the one-year statutory redemption period and will extinguish the mortgagor's debt, the Johnny Ray companies' negligence and/or wantonness counterclaim cannot stand. The summary judgment in favor of Wachovia and against the Johnny Ray companies on that counterclaim is therefore affirmed.

IV.
The trial court entered a summary judgment in favor of Wachovia on the Johnny Ray companies' breach-of-contract, fraud, and negligence and/or wantonness counterclaims. Because the alleged oral agreement is void by the operation of the Statute of Frauds, the summary judgment on the breach-of-contract and fraud counterclaims is due to be affirmed. The summary judgment on the Johnny Ray companies' negligence and/or wantonness counterclaim is likewise due to be affirmed, because, after purchasing the property at the foreclosure sale, Wachovia was under no duty to accept a subsequent offer by a third party to purchase the property.
AFFIRMED.
SEE, LYONS, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and MURDOCK, J., concur in part and concur in the result.
MURDOCK, Justice (concurring in part and concurring in the result).
I fully concur in the main opinion's conclusion that an option contract for the sale of goods valued at $500 or more is subject to the Statute of Frauds found in Alabama's version of the Uniform Commercial Code ("UCC"). The opinion points to several decisions both within and without this state that support this conclusion. See also, e.g., In re Financial Computer Sys., Inc., 474 F.2d 1258 (9th Cir.1973) (applying California law); Merritt-Campbell, Inc. v. RxP Prods., Inc., 164 F.3d 957, 964 (5th Cir.1999) ("Texas courts apply the UCC when dealing with option contracts."); *1077 Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506 (2d Cir.1989) (referencing New York's version of the UCC). Cf. Byrd v. Bentley, 850 So.2d 232 (Ala.2002) (assuming that a contract providing an option for the purchase of securities was to be treated the same as a contract for the present sale of securities for purposes of the Statute of Frauds).
The plain language of the UCC underpins the view expressed in these cases. The provision in § 7-2-201(1), Ala.Code 1975, of the Statute of Frauds applies to a "contract for the sale of goods." Section 7-2-106(1), Ala.Code 1975, provides that a "contract" includes one "relating to the present or future sale of goods." (Emphasis added.) Section 7-2-106(1) also defines the term "contract for sale" as including "both a present sale of goods and a contract to sell goods at a future time." (Emphasis added.) Section 7-2-106 does not distinguish between contracts for the sale of goods at a future time and contracts for the sale of goods at a future time subject to a condition.[5]See Richard A. Lord, 9 Williston on Contracts § 26:4 (4th ed.1999) ("[A] conditional sale or contract to sell on condition is covered by the Statute [of Frauds]."); 2 Lary Lawrence, Anderson on the Uniform Commercial Code § 2-106:12 (3d ed.2004) ("An option contract for the sale of goods is governed by Article 2 [of the UCC].").
I also agree with the main opinion that, because the alleged option to purchase in the present case was not dependent on there being a proposed sale of the removed equipment to a third party, it was not a right of first refusal.[6] I do not wish for my agreement with the main opinion in this regard to be read, however, as suggesting that the result in this case turns on whether the contract alleged by Johnny Ray Sports is properly referred to as an "option contract" rather than a "right of first refusal." The latter term, no less than the former, refers to contracts for the purchase and sale of goods at a future time, subject to one or more conditions. The contracts to which the latter term refers have the added condition precedent of the property owner's decision to sell the property to a third party.[7] Moreover, applying *1078 the Statute of Frauds to "option contracts" generally, but not to "rights of first refusal," would lose sight of the overarching objective of preventing fraud and safeguarding the fundamental rights of property owners to decide whether, when, to whom, and under what circumstances the owner will dispose of his or her property.
Except as discussed above, I concur in the main opinion.
COBB, C.J., concurs.
NOTES
[1] This Court subsequently notified the Johnny Ray companies that the trial court's August 16, 2006, order entering judgment for Wachovia was not a final order because Wachovia's claim based on the unpaid promissory notes remained pending. The trial court thereafter entered an order certifying its August 16, 2006, order as final pursuant to Rule 54(b), Ala. R. Civ. P.
[2] In Griese-Traylor Corp., the United States Court of Appeals for the Fifth Circuit considered that issue and stated:

"The district court correctly held that the oral contract between Griese-Traylor and the Bank is unenforceable because the Statute of Frauds requires option contracts for the sale of land to be in writing. This is true, regardless of whether the Tennessee or Alabama statute of frauds applies."
572 F.2d at 1042.
[3] Section 6-5-253, Ala.Code 1975, states, in pertinent part:

"(c) The purchaser shall be entitled to all rents paid or accrued including oil and gas or mineral agreement rentals to the date of the redemption, and the rents must be prorated to such date. The purchaser or his or her transferee and his or her tenants shall have the right to harvest and gather the crops grown by them on the place for the year in which the redemption is made, but must pay a reasonable rent for the lands for the proportion of the current year to which such redemptioner may be entitled.
"(d) Any one entitled and desiring to redeem shall be granted a credit as against the amount of money required to be paid for redemption as follows:
"(1) For all timber cut or sold on the land by the purchaser or his or her transferees, during the statutory period of redemption.
"(2) For any oil and gas, minerals (including coal bed gas), sand, and gravel, taken from the land or sold, and for advanced royalties or bonuses received by the purchaser or his or her transferees, during the statutory period of redemption.
"(3) To the extent the value of the property is diminished when any structures or buildings are changed, removed, demolished, or destroyed by the purchaser or his or her transferees during the statutory period of redemption."
[4] For example, in the present case Wachovia and the Johnny Ray companies disagree as to how concrete the offer to purchase the Gadsden property was. Our holding that Wachovia had no duty to accept the offer and sell the property obviates the need to consider that issue.
[5] In an option contract, a condition to the owner's obligation to sell and the purchaser's obligation to buy is the purchaser's decision that it does in fact wish to buy the subject property.
[6] A right of first refusal commonly gives the prospective purchaser the right to purchase certain property at the same price and under the same terms as would govern the owner's sale of the property to a third party. Alternatively, a prospective purchaser may have a contractual right to purchase based on a price or other terms that may be agreed to in advance between the prospective purchaser and the owner or that may differ from the price or other terms on which the owner thereafter is willing to sell to a third party. Such an agreement nonetheless would constitute a right of first refusal if the prospective purchaser's right thereunder is triggered by a proposed sale of the property by the owner to a third party. See discussion infra.
[7] Some authorities expressly support the view that rights of first refusal may be analyzed as a subspecies of option contracts. See, e.g., Ferrero Constr. Co. v. Dennis Rourke Corp., 311 Md. 560, 567, 536 A.2d 1137, 1140 (1988) (citing Restatement (First) of Property § 413 (comment b) (1944) for the proposition that a right of first refusal is merely a type of option contract); Restatement (First) of Property § 393 (comment f) (1944) ("An option to purchase is necessarily subject to one or more conditions precedent. . . . Sometimes the option confers on the holder . . . the unqualified privilege to purchase whenever he chooses; sometimes this privilege is more qualified, as for example, when it is to exist, but only if, the owner wishes to sell. In this latter situation, the `option to purchase' takes the form of a `pre-emptive right'. . . . Thus the term `option,' as used in this Restatement, includes not only the situation where the holder of the option has the privilege to take or not to take the thing in question, but also the situation where the person subject to the option is required to deal with the holder of the option before he is free to deal with others."). Compare 17 C.J.S. Contracts § 56 (1999) (stating that "a right of first refusal is a conditional option which is dependent upon the decision to sell the property by its owner," and that it "is the weakest of options," while also stating that "technically, it is not an option at all" in the sense that "it does not require the grantor to offer the property subject to it for sale, ever."). But see 3 Arthur L. Corbin, Corbin on Contracts § 11.3 at 468 (1996) (focusing on the obvious "dissimilar[ity] in the legal relations of the parties" to conclude that it is "logically inaccurate" to include rights of first refusal "under the heading `Option Contracts,' as if they were merely a special variety thereof").