The plaintiff, William Waites, sued The University of Alabama Health Services Foundation; Griffith R. Harsh III, M.D.; Richard Naftalis, M.D.; and Mark J. Cuffe, M.D., alleging medical malpractice in the defendants' care and treatment of the plaintiff.[1] The trial court entered a summary judgment in favor of the defendants, and Waites appeals. We affirm.
In July 1990, William Waites came to the neurological service of the University of Alabama at Birmingham Hospitals, complaining of weakness in his hands and what came to be diagnosed as paresthesia[2] in his upper extremities and hands. A CT myelogram[3] was performed on Waites, and the results of that test showed that Waites was suffering from "severe spondylosis and stenosis from his third cervical vertebra to his seventh cervical vertebra."[4]
On July 12, 1990, Dr. Naftalis, then chief resident in neurosurgery, discussed with Waites the surgical treatment for his condition and informed Waites of the benefits of the surgery as well as the risks, including the possibility of quadriplegia, progressive myelopathy,[5] and ventilator dependency. Waites chose to have the surgery and, on July 12, 1990, Dr. Naftalis performed a bilateral cervical laminectomy[6]
to relieve the compression of Waites's spinal cord. Dr. Cuffe, a junior neurosurgery resident, assisted Dr. Naftalis during the surgery, and Dr. Harsh, Waites's attending physician, was also present. In their affidavits, Dr. Naftalis and Dr. *Page 840 
Cuffe testified that the surgery was successful.
On July 16, 1990, Dr. Cuffe saw Waites during hospital rounds; Waites complained at that time of weakness in his legs. Dr. Cuffe noted weakness in Waites's arms and legs. Dr. Naftalis and Dr. Cuffe ordered tests (a CT myelogram and an MRI[7]) to determine whether Waites's symptoms were the result of swelling of the spinal cord or of an epidural hematoma.[8] The tests revealed an epidural hematoma, and Dr. Harsh successfully evacuated the hematoma that same day. Dr. Naftalis and Dr. Cuffe stated that, following successful evacuation of the hematoma, Waites "improved neurologically" and made a good recovery.
The defendant doctors stated that epidural hematoma is a known complication of a cervical laminectomy, and that the risk of the hematoma, along with other possible risks, was explained to Waites before surgery. The doctors also testified that Waites's epidural hematoma was diagnosed and treated as quickly as possible.
According to Waites, the defendant doctors diagnosed the existence of the epidural hematoma, but directed that he be given the drug Decadron and that his condition be monitored. It was only after his post-operative symptoms worsened, claimed Waites, that the defendant doctors surgically evacuated the hematoma, thus relieving the symptoms. Waites further alleged that, because of the defendant doctors' delay in providing the proper treatment for his condition, he suffered paralysis and emotional distress.
Waites sued the doctors and The University of Alabama Health Services Foundation, seeking damages for medical negligence, pursuant to Ala. Code 1975, § 6-5-540 et seq. (the Alabama Medical Liability Act). The defendants filed a motion for summary judgment, supported by the defendant doctors' affidavits and by a memorandum of alleged facts and legal argument. On August 5, 1993, Waites filed a motion for partial summary judgment on the issue of the defendants' liability, supported by the affidavit of Dr. A. Hyman Kirshenbaum and by Waites's memorandum of alleged facts and legal argument. On that same day, Waites also filed a response to the defendants' motion for summary judgment (supported by Dr. Kirshenbaum's affidavit) and a motion to strike the defendants' motion for summary judgment or, in the alternative, to continue the date set for trial and for the hearing on the pending motions.
On August 6, the defendants filed a motion to strike the affidavit of Dr. Kirshenbaum, on the grounds that 1) given the requirements of the Alabama Medical Liability Act, Dr. Kirshenbaum was not qualified to testify against them; and 2) Dr. Kirshenbaum's affidavit was based on hearsay rather than on personal knowledge.
On August 9, 1993, the day set for the hearing on the pending motions and for the beginning of the trial, Waites filed, in open court, a motion to strike the defendant doctors' affidavits on the ground that they did not affirmatively establish the required standard of care for treating Waites's post-operative condition. Waites also moved to continue the hearing on the summary judgment motions and the trial. The trial court granted Waites's motion to continue the trial, but refused to continue the hearing on the summary judgment motions.
The judgment, entered on August 13, 1993, from which this appeal is taken, reads:
 "8-19-93 IT IS CONSIDERED that the motion for summary judgment by the plaintiff is not well taken and the same is overruled and denied. The motion for summary judgment by the defendants, Griffith R. Harsh III, M.D.; Richard Naftalis, M.D.; Mark J. Cuffe, M.D.; and University of Alabama Health Services Foundation, P.C., is well taken and granted. There being no just reason for delay, final judgment is hereby rendered in favor of the defendants, Griffith R. Harsh III, M.D.; Richard Naftalis, *Page 841 
M.D.; Mark J. Cuffe, M.D.; and University of Alabama Health Services Foundation, P.C., as per Ala.R.Civ.P., Rule 54(b). Costs taxed to the plaintiffs."
Section 6-5-548, part of the Alabama Medical Liability Act of 1987 (§ 6-5-540 et seq.), provides, in part, as follows:
 "(a) In any action for injury . . ., against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.
 "(b) If the health care provider whose breach of the standard of care is claimed to have created the cause of action is not certified by an appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similarly situated health care provider' is one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same discipline or school of practice; and
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.
 "(c) If the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced in a medical speciality, or holds himself out as a specialist, a 'similarly situated health care provider' is one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same speciality; and
 "(3) Is certified by an appropriate American board in the same specialty; and
 "(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.
". . . .
 "(e) The purpose of this section is to establish a relative standard of care for health care providers. A health care provider may testify as an expert witness in any action for injury . . . against another health care provider based on a breach of the standard of care only if he is a 'similarly situated health care provider' as defined above."
In addition to the legislature's establishing, in the Alabama Medical Liability Act, a "relative standard of care for health care providers" and providing in that Act the criteria that a prospective expert medical witness must meet, this Court has long required expert medical testimony to establish whether the correct medical treatment and procedure were followed.Powell v. Mullins, 479 So.2d 1119 (Ala. 1985); Swendsen v.Gross, 530 So.2d 764 (Ala. 1988). "An exception to this general rule exists where an understanding of the doctor's alleged lack of due care or skill requires only common knowledge or experience." Powell v. Mullins, 479 So.2d at 1120.
Because "common knowledge or experience" is not sufficient to allow an understanding of the medical negligence alleged in Waites's complaint, Waites was required, by Alabama law, to provide expert medical testimony to establish the elements of a prima facie case of medical negligence against these defendants. Waites, in keeping with this general rule, submitted the affidavit of Dr. Kirshenbaum, in which Dr. Kirshenbaum testified as to his knowledge of the required standard of care and as to his opinion that the defendants had breached that standard.
Waites contends that, given the provisions of the Act and his own expert's affidavit testimony, in order to grant the defendants' motion for summary judgment the trial court must have concluded, as a matter of law, that *Page 842 
Dr. Kirshenbaum's affidavit was due to be stricken, thus leaving Waites with no support for his claim of medical negligence by the defendant doctors. Further, says Waites, the trial court could have reached this conclusion only after first finding that Dr. Kirshenbaum was not a "similarly situated health care provider," as defined by § 6-5-548, or that Dr. Kirshenbaum's affidavit was based on inadmissible hearsay rather than on personal knowledge, or both.
The defendants counter Waites's contentions by arguing that Dr. Kirshenbaum's affidavit was defective because, they say, "it consisted of opinions based on his review of medical records which were not in evidence, properly authenticated, or attached to or served with the affidavit." We agree.
The testimony of Waites's expert was proffered in opposition to the defendants' properly supported Rule 56, A.R.Civ.P., motion for summary judgment. It was necessary, then, that Dr. Kirshenbaum's affidavit meet the requirements of Rule 56(e), the pertinent portion of which provides:
 "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."
(Emphasis supplied.)
This Court, in Ex parte Head, 572 So.2d 1276 (Ala. 1990), held that "the requirements of Rule 56(e) are mandatory." Although the Head decision dealt with the provisions of Rule 56(e) requiring that the affidavit "be made on personal knowledge" and that it "set forth such facts as would be admissible in evidence," our holding that the requirements of Rule 56(e) are mandatory certainly can not be limited to those two requirements. Indeed, the two further requirements — that the affidavit "show affirmatively that the affiant is competent to testify to the matter stated therein" and that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith" — are no less critical in testing the propriety of an affidavit in support of, or in opposition to, a summary judgment motion.
We hold, therefore, that because no medical records were attached to or served with the affidavit of Dr. Kirshenbaum, the affidavit was properly disregarded by the trial court. Consequently, Waites, as a matter of law, did not rebut the defendants' properly supported summary judgment motion by presenting evidence creating a prima facie case of medical negligence on the part of the defendant doctors; thus, the trial court correctly entered the summary judgment in favor of the defendants. That judgment is affirmed.
This opinion was prepared by retired Justice RICHARD L. JONES, sitting as a Justice of this Court pursuant to §12-18-10(e), Ala. Code 1975, and it is hereby adopted as that of the Court.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL and COOK, JJ., concur.
[1] In his original complaint, filed on November 28, 1990, Waites included as defendants The University of Alabama Health Services Foundation, P.C.; The University of Alabama Medical Center Foundation; The University of Alabama Hospitals; Griffith R. Harsh III, M.D.; Richard Naftalis, M.D.; Mark J. Cuffe, M.D.; and fictitiously named defendants. On January 15, 1991, Waites filed an amendment (1) striking The University of Alabama Medical Center Foundation, as a "non-existent party"; (2) dismissing The University of Alabama Hospitals on the basis of immunity from suit; and (3) naming the parties as follows: "William Waites, Plaintiff v. The University of Alabama Health Services Foundation, P.C.; Griffith R. Harsh III, M.D.; Richard Naftalis, M.D.; Mark J. Cuffe, M.D.; and fictitious parties, Defendants."
[2] "An abnormal sensation, such as burning, pricking, tickling, or tingling." Stedman's Medical Dictionary (25th ed., 1990).
[3] "Roentgenographic study of the spinal cord." Stedman's MedicalDictionary (25th ed., 1990).
[4] "Spondylosis" is a term "often applied nonspecifically to any lesion of the spine of a degenerative nature"; "stenosis" denotes a "narrowing or stricture of any canal." Stedman'sMedical Dictionary (25th ed., 1990).
[5] "Disturbance or disease of the spinal cord." Stedman's MedicalDictionary (25th ed., 1990).
[6] Excision of cervical vertebral lamina. Dorland's IllustratedMedical Dictionary (25th ed., 1974).
[7] A "magnetic resonance imaging" procedure.
[8] "Accumulation of blood in the epidural space . . . producing compression of the dura mater [membrane covering the spinal cord]." Dorland's Illustrated Medical Dictionary (25th ed., 1974).