Richard T. Carraway ("Richard"), as executor of the estate of Shirley Gail Carraway ("Shirley"), deceased, seeks a reversal of a summary judgment in favor of defendant Terry Kurtts, M.D. ("Dr. Kurtts"). We affirm.
 Facts and Procedural History
In May 2003, Dr. Kurtts, a board-certified family practitioner, admitted Shirley to South Baldwin Regional Medical Center for evaluation to determine whether she should be placed in a nursing home. Shirley was evaluated by a neurologist, who diagnosed her as having Parkinson's disease. A few days later, Dr. Kurtts admitted Shirley to a nursing home owned and operated by Beverly Enterprises Alabama, Inc., doing business as Beverly Health-care-Foley ("Beverly"), with diagnoses of Parkinson's disease, gastrointestinal bleeding, depression, pneumonia, and convulsions. While she was at the nursing home, Shirley was taking several drugs prescribed by Dr. Kurtts. Over the course of the next five months, Shirley was treated on several occasions at the emergency room at South Baldwin Regional Medical Center for complaints including drug withdrawal, anxiety attacks, internal bleeding, and pneumonia.
In November 2003, a nursing-home employee found Shirley having convulsions on the floor in her room; part of her body was wedged beneath her bed. She suffered a cut and some bruising as a result of the convulsions. Sometime later that same day, Shirley fell from her bed. Shirley was found by her brother Richard, a trained paramedic, who had come to visit her at the nursing home. After seeing that Shirley was barely breathing and that her skin was a bluish color, Richard called for help from the nursing staff and began performing CPR while waiting for emergency medical services to arrive. Paramedics were initially delayed in their efforts to reach Shirley because the nursing-home doors had been locked for the night. Shirley was taken by the paramedics to South Baldwin Regional Medical Center, where she was pronounced dead. Two days later an autopsy revealed that, "[while] no specific findings . . . account for the patient's `acute illness' prior to her death, the origin was likely cardiac given the evidence of changes caused by hypertension and the evidence of early heart failure."
In November 2005, Richard, as executor of Shirley's estate, brought a wrongful-death action against Dr. Kurtts, Beverly, and several employees of Beverly. Beverly moved the trial court to compel arbitration pursuant to an agreement signed when Shirley was admitted to the nursing home. The trial court granted that motion, [1] *Page 514 
and Dr. Kurtts then moved to be excluded from the arbitration order. The trial court granted that motion. Shortly after he was excluded from the arbitration order, Dr. Kurtts moved for a summary judgment. The trial court set the hearing on that motion for August 28, 2006. Less than 24 hours before that hearing, Richard filed his motion in opposition to the summary judgment, along with a request under Rule 56(f), Ala. R. Civ. P., for "additional discovery and additional time for [Richard's standard-of-care expert], Dr. Cutson, to do those things necessary to submit an adequate affidavit to oppose Dr. Kurtts'[s] motion for summary judgment." The trial court granted a continuance to allow Richard's standard-of-care expert to submit an affidavit. In September 2006, Richard filed the first affidavit of Dr. Toni Cutson. In November 2006, the trial court held the hearing on Dr. Kurtts's motion for a summary judgment. Two weeks after the hearing was completed, Richard filed a second affidavit from Dr. Cutson. The trial court then entered a summary judgment in favor of Dr. Kurtts. Richard now appeals.
 Issues
Richard presents three issues on appeal. The first is whether the trial court erred in finding that Dr. Kurtts produced sufficient evidence indicating that he did not breach his duty of care to shift the burden of proof to Richard. The second is whether the trial court erred in holding a hearing on a summary-judgment motion before discovery was completed. The third issue is whether Richard presented admissible, substantial evidence from a similarly situated health-care provider that Dr. Kurtts breached the standard of care applicable to a family practitioner.
 Standard of Review
"Our review of a summary judgment is de novo. . . ."Williams v. State Farm Mut. Auto. Ins. Co.,886 So.2d 72, 74 (Ala. 2003). In order to uphold a summary judgment, we must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. "When the movant makes a prima facie showing that those two conditions have been satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact." Blue Cross Blue Shield v.Hodurski, 899 So.2d 949, 952 (Ala. 2004). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989); see also § 12-21-12(d), Ala. Code 1975. In reviewing a summary judgment, we must view the evidence in the light most favorable to the nonmovant. Johnny Ray Sports, Inc. v. Wachovia Bank,982 So.2d 1067, 1071 (Ala. 2007).
 Analysis I.
The first issue is whether the trial court erred in finding that Dr. Kurtts presented sufficient evidence to meet his initial burden of showing that he did not breach his duty of care. Richard contends that the affidavit submitted by Dr. Kurtts does not address all the claims against him. Specifically, Richard alleges that because paragraph 4 of Dr. Kurtts's affidavit addresses only the last 24 hours of Shirley's life, Dr. Kurtts fails to address the *Page 515 
specific claims alleged in Richard's complaint. The allegations made in the complaint against Dr. Kurtts specify neither a date nor a time when the alleged breaches occurred; however, the complaint alleges facts that begin with Dr. Kurtts initially treating Shirley in May 2003 and that end with her death November 14, 2003. In his affidavit, Dr. Kurtts states that he is a board-certified family practitioner "familiar with the standard of care of board-certified family practitioners caring for nursing home patients in 2003." Dr. Kurtts states that he took part in Shirley's treatment from May 6, 2003, until November 14, 2003. He further states that he "met the standard of care of board-certified family practitioners at all times material to the plaintiffs complaint."
Richard cites Mixon v. Cason, 622 So.2d 918
(Ala. 1993), for the proposition that on a motion for a summary judgment by a health-care provider in a medical-malpractice action, the health-care provider bears the initial burden of producing evidence demonstrating that no genuine issue of material fact exists. 622 So.2d at 921. In Mixon, the plaintiff amended her complaint to include new claims, and those new claims were not addressed by the affidavits of three of the defendants in support of their summary-judgment motion. We held that those defendants had not met their initial burden because they had failed to demonstrate the absence of a genuine issue of material fact. Therefore, we reversed the summary judgment as to those defendants. Richard has not amended his complaint to allege any claims against Dr. Kurtts other than those already addressed in Dr. Kurtts's affidavit. Moreover, this Court has held:
"Regarding the relative burdens of proof to be considered in determining whether a party has met the requirements for a summary judgment, we have stated:
 "`". . . .
 "`"If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56 burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim. . . ."'"
Verchot v. General Motors Corp., 812 So.2d 296, 300
(Ala. 2001) (quoting Ex parte General Motors Corp.,769 So.2d 903, 909 (Ala. 1999), quoting in turn Berner v.Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially)).[2] Dr. Kurtts's affidavit denies that he breached the applicable standard of care, an essential element of Richard's claims against Dr. Kurtts. We therefore hold that the trial court did not err in finding that Dr. Kurtts presented sufficient evidence to shift the burden of proof to Richard.
 II.
The second issue is whether the trial court erred by conducting a hearing on the summary-judgment motion before discovery was completed. The day before the trial court's first scheduled hearing on Dr. Kurtts's summary-judgment motion, Richard filed his response to that motion and a Rule 56(f), Ala. R. Civ. P., motion, seeking a continuance to allow him to secure an affidavit from an expert witness. *Page 516 
Rule 56(f) provides: "Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained. . . ." Richard's Rule 56(f) motion stated that he needed more time and discovery in order "to do those things necessary for [Richard] to submit an adequate affidavit to oppose Dr. Kurtts'[s] motion for summary judgment." Despite the fact that Richard's motion was not supported by the affidavit required by Rule 56(f), the trial court granted Richard a two-and-one-half-month continuance. Three weeks after the continuance was granted, Richard submitted an affidavit provided by the physician named in Richard's Rule 56(f) motion. Richard now alleges, however, that the trial court erred in not allowing him to complete discovery before it ruled on Dr. Kurtts's summary-judgment motion.
Richard appears to rely on our decision in Phillips v.AmSouth Bank, 833 So.2d 29 (Ala. 2002), for the proposition that a motion for a summary judgment may not be granted before discovery is completed. Such a proposition is a misinterpretation both of the holding in Phillips and of the substance of Rule 56, Ala. R. Civ. P. Rule 56(c)(3) provides: "The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Where a party has had insufficient time to conduct the discovery necessary to oppose such a motion, Rule 56(f) allows the trial court discretion to "deny the motion for summary judgment or . . . order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or . . . [to] make such other order as is just."
In Phillips v. AmSouth Bank, this Court reversed a summary judgment, holding that the trial court had exceeded its discretion by entering the judgment only five days after a Rule 56(f) motion had been filed in a case in which no discovery had been conducted. Phillips, 833 So.2d at 32. Unlike the trial court in Phillips, however, the trial court in this case granted Richard a continuance of two and one half months. As a result of that continuance, Richard was able to obtain and submit an affidavit — which he now argues is adequate — to oppose Dr. Kurtts's motion for a summary judgment. See Richard's brief at 36. Our decision inPhillips is therefore not apposite to this case.
Richard was granted the two-and-one-half-month continuance to allow him to secure an adequate affidavit from his expert witness. Dr. Cutson's initial affidavit, submitted by Richard 8 weeks before the second hearing, contains references to no fewer than 14 sets of medical records. Richard's second motion in opposition to Dr. Kurtts's summary-judgment motion, filed six days before the second scheduled hearing, did not contain an additional request for Rule 56(f) relief, a request for further discovery, a request for additional time, or any allegation that the discovery upon which Dr. Cutson's affidavit was based was insufficient to oppose the summary judgment. The purpose of the pre-hearing continuance was not to allow for exhaustive discovery reaching all aspects of the case, but to allow Richard sufficient time to secure and submit an affidavit on the issue whether Dr. Kurtts had breached the standard of care. From the evidence, nothing indicates that further discovery or delay was warranted before the trial court held its hearing on Dr. Kurtts's summary-judgment *Page 517 
motion. Therefore, we hold that the trial court did not err in granting a continuance for the limited purpose of allowing Richard to obtain his requested affidavit before entering a summary judgment and in entering a summary judgment before all discovery had been completed.
 III.
The third issue is whether Richard presented admissible, substantial evidence from a similarly situated health-care provider indicating that, in treating Shirley, Dr. Kurtts breached the standard of care applicable to a family practitioner. When a defendant in a medical-malpractice action has met his burden of production on a summary-judgment motion, the burden then shifts to the plaintiff to prove "by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case." § 6-5-548(a), Ala. Code 1975. This burden is usually met by presenting expert medical testimony, which may be provided only by a "similarly situated health care provider." § 6-5-548(e), Ala. Code 1975. In cases where the defendant in a medical-malpractice action is a specialist, the similarly situated health-care provider must meet four qualifications:
 "(1) [He or she must be] licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) [He or she must be] trained and experienced in the same specialty.
 "(3) [He or she must be] certified by an appropriate American board in the same specialty.
 "(4) [He or she must have] practiced during the year preceding the date that the alleged breach of the standard of care occurred."
§ 6-5-548(c), Ala. Code 1975. When the testimony of a proposed standard-of-care expert witness in a medical-malpractice case is presented by an affidavit, this Court has held that, "[to] be admissible, an affidavit offered in support of a summary-judgment motion must `show affirmatively that the affiant is competent to testify to the matters stated therein.' Rule 56(e), Ala. R. Civ. P."Sherrer v. Embry, 963 So.2d 79, 83 (Ala. 2007). Rule 56(e) further mandates that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." If a plaintiff fails to produce admissible expert testimony by one who qualifies as a similarly situated health-care provider as to the standard of care, the defendant health-care provider is entitled to a summary judgment as a matter of law. Sherrer,963 So.2d at 83.
Here, Richard presented two affidavits regarding the standard of care from his expert witness, Dr. Toni Cutson. The first affidavit was filed on September 20, 2006. The first affidavit fails to comply with the mandatory elements for admissibility under Rule 56(e), Ala. R. Civ. P. Rule 56(e) requires that sworn or certified copies of all documents referenced in the affidavit be attached to or served with the affidavit. Richard did not attach or serve certified copies of the medical documents Dr. Cutson considered in rendering her opinion. Indeed, no documents were attached to or served with the first affidavit. At no time did Richard move the trial court for leave to supplement the affidavit with certified medical records in compliance with Rule 56(e). Moreover, Richard admits to this Court that Dr. Cutson's opinion regarding the alleged breach in this wrongful-death action was based on multiple uncertified medical records, including the decedent's autopsy report. Richard's reply brief at 10. *Page 518 
Although Richard attached several medical documents as exhibits to his motion in opposition to a summary judgment, it is impossible to reconcile the 14 records referenced in the first affidavit with the 23 records that appear in the exhibits before us. No document referenced in the first affidavit shares the same name or description as a document in the exhibit list.[3] Thus, we cannot conclude that Richard has corrected the defects in the affidavit he submitted, even had the medical records attached to the motion all been sworn or certified.
In her first affidavit Dr. Cutson states that she is "licensed to practice medicine in the State of North Carolina," that she "presently serve[s] as Director of Geriatrics at the Veteran's Administration Hospital in Durham, NC," and that she is a "member of the Duke Medical School Faculty." The affidavit does not state whether Dr. Cutson is trained and experienced in the same specialty as Dr. Kurtts. The affidavit does not state whether Dr. Cutson is a board-certified family practitioner; neither does it state whether Dr. Cutson had practiced in the same specialty as Dr. Kurtts during the year preceding the alleged breach.
On appeal, Richard alludes to Dr. Cutson's curriculum vitae, which was attached to Richard's November 8, 2006, motion in opposition to the motion for a summary judgment, in the following parenthetical notation:
 "20. Dr. Toni Cutson, a similarly situated healthcare provider as defined by § 6-5-548, Code of Alabama (Exhibit V — CV of Dr. Cutson) was also asked to conduct a records review to determine whether or not Dr. Kurtts had breached the standard of care and, if so, whether one or more of those breaches proximately caused the death of Shirley Carraway."
Dr. Cutson's affidavit had been submitted on September 20, 2006, and reappears as Exhibit W to Richard's motion. The affidavit does not reference the curriculum vitae, nor does the curriculum vitae reference the affidavit that Richard would now have us say it supports. Moreover, if the curriculum vitae was intended to support the affidavit, it needed to have been sworn or certified. See Rule 56(e), Ala. R. Civ. P.[4] Moreover, any supplementation of the affidavit is to be done with the court's permission, which was not sought in this case. When reviewing a summary judgment, we apply the same standard as the trial court applied. The curriculum vitae was not submitted in support of Dr. Cutson's affidavit and fails to meet the mandatory requirements of a supporting document to an affidavit under Rule 56(e), Ala. R. Civ. P. Thus, it is not properly before us in support of an affidavit with which it *Page 519 
was not submitted and which does not even reference it.
Even, however, if we were to consider the curriculum vitae, it is not clear from the curriculum vitae that Dr. Cutson was a similarly situated health-care provider to Dr. Kurtts at the relevant time. The curriculum vitae reflects that Dr. Cutson was a board-certified family practitioner at the time of the hearing and during the year preceding Dr. Kurtts's alleged breach of the standard of care; however, none of the professional appointments listed on Dr. Cutson's curriculum vitae indicate that she practiced in the same general area of practice at the time of the hearing or during the year preceding the alleged breach, as is required of similarly situated physicians. § 6-5-548(c)(4), Ala. Code 1975. Only those positions Dr. Cutson held for the year preceding May through November 2003 are relevant to whether Dr. Cutson qualifies as a similarly situated physician. See § 6-5-548(c)(4), Ala. Code 1975.[5] Dr. Cutson's curriculum vitae states that during the relevant period she served as an "Assistant Medical Director," a "Staff Physician, Geriatric Research, Education and Clinical Center," a "Staff Physician, Spinal Cord Injury Dysfunction Team," a "Medical Director of the Palliative Care Consult Team," and a "Physician member of VISN 6 VHA Palliative Care Team." Dr. Kurtts is not accused of breaching the standard of care applicable to a medical director, a researcher in geriatrics, a spinal-cord specialist, or a palliative-care specialist, nor do any of these positions affirmatively in dicate that Dr. Cutson was involved in the specialty of family practice during the relevant period. To conclude that she was would require us to speculate as to what she might have been doing as a medical director or researcher or in her other specialties, something that she could easily have made clear in her affidavit if she had in fact been actively engaged in family-practice medicine at the relevant time. Therefore, even if we were to consider the curriculum vitae, it is not apparent from the curriculum vitae that the positions listed are sufficient to qualify Dr. Cutson as a similarly situated physician.
Dr. Cutson's affidavit suggests six different ways in which Dr. Kurtts breached a standard of care, but it does not allege that the standard of care that was breached is the standard of care applicable to a board-certified family practitioner. "In this case, the standard of care allegedly breached is the standard of care that a doctor would exercise in assessing, treating, caring for and monitoring a Parkinson's disease patient whom the doctor has admitted to a nursing home or long term care facility and whom he undertook to attend during the patient's residency." Richard's brief at 43. Richard has chosen to support this allegation with an expert's affidavit that fails to mention whether Dr. Cutson practiced family practice, whether she treated patients with Parkinson's disease, or whether she provided nursing-home care; the affidavit fails even to define the applicable standard of care.[6] *Page 520 
Further, the first affidavit is inadmissible, even without consideration of the curriculum vitae. This Court has held:
 "Indeed, the two further requirements [of Rule 56(e)] — that the affidavit `show affirmatively that the affiant is competent to testify to the matter stated therein' and that `[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith' — are no less critical in testing the propriety of an affidavit in support of, or in opposition to, a summary judgment motion.
 "We hold, therefore, that because no medical records were attached to or served with the affidavit of Dr. [A. Hyman] Kirshenbaum, the affidavit was properly disregarded by the trial court."
Waites v. Univ. of Ala. Health Servs. Found.,638 So.2d 838, 842 (Ala. 1994). The affidavit does not affirmatively show that Dr. Cutson was competent to testify, lacking any averment as to her board certification in family practice or practice in that specialty during the year preceding the alleged breach. The affidavit was not attached to, served with, or supplemented by certified copies of the medical documents referred to in it. Therefore, applying the holding in Waites, we conclude that the first affidavit offered by Richard fails to meet the mandatory elements for admissibility under Rule 56(e), Ala. R. Civ. P.
Further, in Skerrer this Court held:
 "To be admissible, an affidavit offered in support of a summary-judgment motion must `show affirmatively that the affiant is competent to testify to the matters stated therein.' Rule 56(e), Ala. R. Civ. P. Dr. [James R.] Stilwell's affidavit does not demonstrate that he satisfies the requirements for qualifying as a `similarly situated health care provider' under § 6-5-548(b), Ala. Code 1975. Thus, the trial court did not exceed its discretion in excluding his expert testimony. Because Dr. Stilwell's affidavit is not admissible, the Sherrers have failed to rebut Dr. Embry's prima facie showing that he met the applicable standard of care in his treatment of Stephanie Sherrer. Thus, the trial court did not err in entering a summary judgment in favor of Dr. Embry."
Sherrer, 963 So.2d at 83. The only provision that Rule 56(e), Ala. R. Civ. P., makes for supplementing an affidavit is by "depositions, answers to interrogatories, or further affidavits." None of the subsequent timely submissions by Richard, including the curriculum vitae, were provided in this manner. In Sherrer and Waites this Court held that Rule 56(e), Ala. R. Civ. P., mandates that affidavits affirmatively show the affiant competent to testify and that any referenced document be certified or sworn and attached or served with the affidavit. Because the expert witness's affidavit submitted by Richard failed to comply with either of these mandates of Rule 56(e), the affidavit is inadmissible and not properly before this Court in review of the summary judgment.[7]
Richard filed a second affidavit on November 29, 2006, over two weeks after the hearing on Dr. Kurtts's summary-judgment motion on November 14, 2006. Rule 56(c), Ala. R. Civ. P., states that "any statement or affidavit in opposition [to a motion for a summary judgment] shall be served at least two (2) days prior to the *Page 521 
hearing." Guess v. Snyder, 378 So.2d 691
(Ala. 1979), is on point. The plaintiff in Guess, a medical-malpractice case decided by a summary judgment, was granted a continuance for the express purpose of obtaining an opposing affidavit. Before the hearing on the summary-judgment motion, the plaintiff submitted an affidavit and an unsworn attachment from the proposed standard-of-care expert-witness physician that was insufficient under Rule 56(e), Ala. R. Civ. P. On Friday, March 9, one week after the hearing held on March 2, the plaintiff filed with the court another affidavit from the same physician. Five days after that, on March 14, the court entered a summary judgment in favor of the defendant. This Court refused to consider the second, untimely affidavit:
 "The trial court can consider only that material before it at the time of submission of the motion.
 "To like effect are the federal cases, interpreting [Fed.R.Civ.P.] 56. Any material filed after submission of the motion comes too late.
 ". . . Plaintiff had no material on file to oppose [the defendant's] motion, except the unsworn hearsay letter from the Kentucky physician. The affidavit filed March 9 was unquestionably untimely. The case had already been submitted to the court on March 2. Thus, we do not know whether the trial court was even aware of the tardy affidavit. We judicially know that March 9, 1979, was a Friday. We also know the judgment was dated March 14, the following Wednesday. It is very likely that the trial judge did not know of the filing of the tardy affidavit when he made his ruling. Certainly, the duty fell on the plaintiffs attorney to timely file and present his supporting papers.
 ". . . We are not to be understood as holding that the trial judge could not have considered the tardy affidavit if the record clearly indicated it had been presented to him before his ruling on summary judgment."
378 So.2d at 692-93 (citations omitted).
The issue here is nearly identical. Richard was granted a continuance to secure an opposing affidavit. Richard submitted an affidavit before the hearing, but that affidavit failed to meet the mandatory certification and attachment requirements of Rule 56(e), Ala. R. Civ. P. Two weeks after the hearing on the summary-judgment motion, Richard submitted a second affidavit from the same physician, on a Wednesday. Five days later, on Monday, the court entered a summary judgment for Dr. Kurtts. There is no indication in the record that the judge was aware of, considered, or deemed admissible the untimely filed affidavit. Because the second affidavit of Dr. Cutson, filed more than two weeks after the hearing, does not comply with Rule 56(c), it is not properly before this Court on review of the summary judgment.
Although the trial court did not state the basis on which it made its determination, because neither affidavit is admissible Richard has failed to offer any evidence to meet his burden of proving by substantial evidence from a similarly situated health-care provider that Dr. Kurtts breached the applicable standard of care. Because Richard failed to present any admissible, substantial evidence from a similarly situated health-care provider that Dr. Kurtts had breached the applicable standard of care, we cannot conclude that the trial court erred in entering a summary judgment in favor of Dr. Kurtts.
Having failed to demonstrate the existence of a genuine issue of material fact as to whether there was a breach of the standard of care by Dr. Kurtts, Richard did not meet his burden of proof. In the absence of a genuine issue of material fact *Page 522 
and because Dr. Kurtts is entitled to a judgment as a matter of law, we hold that the trial court did not err in entering a summary judgment in favor of Dr. Kurtts.
 Conclusion
In his summary-judgment motion, Dr. Kurtts made a prima facie showing that he had not breached the applicable standard of care. Richard failed to create a genuine issue of material fact, through testimony of a similarly situated health-care provider, as to whether Dr. Kurtts had breached the standard of care. Therefore, we affirm the summary judgment in favor of Dr. Kurtts.
AFFIRMED.
STUART, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and LYONS, WOODALL, and MURDOCK, JJ., concur in the result.
[1] Richard appealed the trial court's order compelling arbitration, and we affirmed. Carraway v. Beverly Enters.Alabama, Inc., 978 So.2d 27 (Ala. 2007).
[2] Because Dr. Kurtts met his Rule 56 burden by submitting an affidavit denying an essential element of Richard's claims, we address only the first of the available options for a nonmovant to meet his or her burden of production.
[3] For example, document "A" referenced in Dr. Cutson's first affidavit is described as "Records from Nancy Ann McLeod, M.D." No record attached to Richard's motion in opposition to summary judgment had been prepared by Dr. McLeod. Document "B" referenced in the first affidavit is described as "Records from Elberta Family Medicine." No record attached to Richard's motion indicates that it is from "Elberta Family Medicine."
[4]
 "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. . . ."
Rule 56(e), Ala. R. Civ. P.
[5] Section 6-5-548(c), Ala. Code 1975, requires that the proffered expert:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same specialty.
 "(3) Is certified by an appropriate American board in the same specialty.
 "(4) Has practiced during the year preceding the date that the alleged breach of the standard of care occurred."
[6] Richard disputes whether § 6-5-548(c) is even the standard to be imposed, arguing instead that § 6-5-548(b), the standard for nonspecialists, is the applicable standard. See Richard's brief at 44.
[7] This Court has held that trial courts have discretion in whether to allow an affidavit to be supplemented by further documents. "This is the only provision in Rule 56(e) that allows the trial court to exercise discretion in considering affidavit testimony in support of or in opposition to a motion for summary judgment." Ex parte Head, 572 So.2d 1276,1281 (Ala. 1990).