MURDOCK, Justice.
Annette F. Johnson appeals from the Limestone Circuit Court’s summary judgment in favor of Troy A. Layton, M.D. (“Dr. Layton”), and SportsMed Orthopaedic Specialists, P.C., d/b/a SportsMed Or-thopaedic Surgery & Spine Center (“SportsMed”), in her medical-malpractice action. We affirm the judgment of the trial court.

I. Facts and Procedural History

On June 25, 2004, Johnson visited Dr. Layton, a board-certified orthopedic surgeon, at SportsMed, a medical group of which he was a member, for treatment of injuries Johnson had sustained to her left elbow, left arm, left wrist, and left hand. Dr. Layton and other personnel at SportsMed treated Johnson several times for those injuries over the next three years until her final visit on February 12, 2007.
On August 4, 2008, Johnson filed a medical-malpractice action against Dr. Layton, Dr. Saranya Nadella (another physician at SportsMed), and SportsMed, alleging that they had negligently and/or wantonly failed to properly diagnose and treat Johnson’s injuries and that this failure had resulted in the loss by Johnson of the use of her left elbow, left arm, left wrist, and left hand, as well as considerable pain and suffering.[1] On November 6, 2008, Johnson filed her first amended complaint, specifically alleging that from the outset of her treatment she had related to Dr. Layton that she was experiencing pain, tingling, and numbness in the fingers of her left hand, a condition a subsequent doctor told her was indicative of an injury to the ulnar nerve in her left arm. She averred in her complaint that Dr. Layton denied that Johnson ever told him that she was experiencing those symptoms and that he had related that her medical records did not indicate that she ever mentioned such symptoms. Johnson charged that Dr. Layton’s failure
“to record the symptoms of damage and injury to the ulnar nerve in [Johnson’s] left arm, specifically, the pain, tingling, and numbness in the little finger and ring finger of [Johnson’s] left hand as well [Johnson’s] loss of use of her left hand, in [Johnson’s] medical records evidences Dr. Layton’s failure to diagnose and treat the damage and injury to the ulnar nerve of [Johnson’s] left arm.”
On July 21, 2009, Dr. Nadella filed a motion for a summary judgment as to all claims against her. On September 16, 2009, SportsMed moved for a partial summary judgment as to all vicarious-liability claims against it based on Dr. Nadella’s acts or omissions. Johnson did not oppose those motions, and the trial court entered an order on October 30, 2009, granting both motions.
On February 9, 2010, Dr. Layton and SportsMed filed a motion for a summary judgment as to the remaining claims in the medical-malpractice action. They supported the motion with an affidavit from *1197 Dr. Layton. In the affidavit, Dr. Layton affirmed that he had “personal knowledge of all the matters stated herein.” The affidavit further provided, in pertinent part:
“I first examined the plaintiff on June 25, 2004 for complaints of pain in her elbow. She was seen on several occasions in my office. The care and treatment I provided to Annette Johnson was appropriate and was within accepted standards of care for an orthopedic surgeon. At no time did I deviate from or fall below any standard of care.
“It is my further opinion that the plaintiffs alleged injuries and damages for which she seeks recovery in this litigation are unrelated to any alleged negligent act or violation of the standard of care on my part. Simply stated, the plaintiff did not suffer any of the injuries and damages for which she seeks a recovery in this litigation because of any care or treatment I provided or documentation in my office chart. None of the plaintiff’s alleged injuries were caused by my care.
“It is my further opinion that none of the plaintiffs alleged injuries or damages were caused by' any of the care provided by any employee or agent of the defendant designated as [SportsMed].”
(Emphasis added.) On March 9, 2010, the trial court set April 16, 2010, as the date for a hearing on the pending motion for a summary judgment.
On April 13, 2010, Johnson filed a motion to strike Dr. Layton’s affidavit, contending that it did not comply with Rule 56(e), Ala. R. Civ. P., because the affidavit mentioned Johnson’s medical records — a reference to the portion of the affidavit emphasized above concerning “documentation in my office chart” — but Dr. Layton failed to attach Johnson’s medical chart to his affidavit. Also on April 13, 2010, Johnson filed her response in opposition to Dr. Layton and SportsMed’s summary-judgment motion. Johnson’s sole contention in her response was that because Dr. Layton’s affidavit was due to be stricken, the “burden of proof never shifted” to Johnson; thus, she argued, she was “not required to substantively oppose” Dr. Layton and SportsMed’s motion for a summary judgment.
On April 14, 2010, Dr. Layton and SportsMed filed their reply to Johnson’s response. In their reply, Dr. Layton and SportsMed contended that Dr. Layton’s affidavit relied upon Dr. Layton’s personal knowledge of his treatment of Johnson and his professional medical opinion, not upon documents that were not attached to the affidavit. Nonetheless, Dr. Layton and SportsMed submitted with their reply over 100 pages of Johnson’s medical records.
On April 15, 2010, Johnson filed what she styled a “Notice Pursuant to Rule 56(c)(2)[, Ala. R. Civ. P.,] that she does not consent to [the] hearing” scheduled for April 16, 2010, regarding the motion for a summary judgment. In this filing, Johnson contended that by filing Johnson’s medical records two days before the hearing, Dr. Layton and SportsMed “failed to comply with the pertinent provisions of Rule 56(c)(2) of Ala. R. Civ. P.” Johnson stated that because of this failure, she “does not consent to this Honorable Court’s hearing Dr. Layton’s and SportsMed’s Motion For Summary Judgment at 10:00 a.m. on Friday, April 16, 2010.”
Despite Johnson’s filing, the trial court held the hearing as scheduled. Following the conclusion of the hearing, the trial court, on April 16, 2010, entered an order that provided that, “[h]aving considered the motion and the material offered in support thereof, the Court is of the opinion *1198 that the motion is well taken and due to be granted.” Accordingly, the trial court entered a judgment in favor of Dr. Layton and SportsMed as to all claims against them.
On May 16, 2010, Johnson filed a motion to alter, amend, or vacate the trial court’s summary judgment in favor of Dr. Layton and SportsMed on all of her claims. Johnson’s sole contention in that postjudgment motion consisted of a reiteration of the argument she presented in her opposition to Dr. Layton and SportsMed’s motion for a summary judgment.
On June 14, 2010, the trial court entered an order denying Johnson’s postjudgment motion. Johnson then filed a timely appeal.

II. Standard of Review

“To grant a motion for a summary judgment, the court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Mitchell v. Richmond, 754 So.2d 627, 628 (Ala.1999). If the party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Id. at 628.”
Bank of Brewton, Inc. v. International Fid. Ins. Co., 827 So.2d 747, 752 (Ala.2002).

III. Analysis

On appeal, Johnson relies upon the same two arguments she expressed to the trial court as to why a summary judgment should not have been entered against her. First, she contends that Dr. Layton’s affidavit should have been stricken because Dr. Layton failed to attach documents referred to in the affidavit. Without Dr. Layton’s affidavit, Johnson insists, Dr. Layton and SportsMed failed to make a prima facie showing that no genuine issues of material fact exist, and, therefore, the burden never shifted to her to present a substantive response to their summary-judgment motion. Second, Johnson contends that the trial court committed reversible error by holding a hearing on Dr. Layton and SportsMed’s motion for a summary judgment two days after they filed copies of her medical records despite the fact that she expressly stated in accordance with Rule 56(c)(2), Ala. R. Civ. P., that she did not consent to the hearing.
Rule 56(e), Ala. R. Civ. P., provides:
“Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or paHs thereof refemd to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.”
(Emphasis added.)
Johnson contends that in his affidavit Dr. Layton referred to “documentation in my office chart” but failed to attach a copy of Johnson’s medical chart to his affidavit and that this failure was fatal to Dr. Lay-ton’s affidavit. According to Johnson, the trial court should have stricken Dr. Lay-ton’s affidavit, leaving Dr. Layton and SportsMed without evidentiary support for their motion for a summary judgment. Johnson argues that the failure to attach her medical chart to the affidavit was particularly egregious, given that she specifically alleged in her amended complaint that Dr. Layton’s failure to record in her medical chart the symptoms she related to *1199 him was indicative of his failure to render acceptable care.
Dr. Layton and SportsMed counter that a plain reading of Dr. Layton’s affidavit shows that he did not rely upon Johnson’s medical chart in expressing his opinion in his affidavit about the medical care he rendered. Instead, as the affidavit states, Dr. Layton relied upon “his personal knowledge” of the medical care he provided to Johnson and upon his “familiarity] with the standard of care required of board certified orthopedic surgeons treating patients similar to Annette Johnson.” According to Dr. Layton and SportsMed, Dr. Layton did not attach Johnson’s medical chart to his affidavit initially because the reference to “documentation in my office chart” was made only in passing, as the sentence in which it is used indicates: “Simply stated, [Johnson] did not suffer any injuries and damages for which she seeks a recovery in this litigation because of any care or treatment I provided or documentation in my office chart.”
A plain reading of Dr. Layton’s affidavit confirms Dr. Layton and SportsMed’s contention that Dr. Layton did not focus or rely upon Johnson’s medical chart in expressing his opinion that his treatment met the standard of care for orthopedic surgeons. Indeed, Johnson does not argue that Dr. Layton relied upon her medical chart for the opinion expressed in his affb davit; she argues only that he referred to her chart and that Rule 56(e), Ala. R. Civ. P., mandates that any reference to outside materials requires that a sworn or certified copy of those materials be attached to the affidavit. The pertinent question that arises from the parties’ arguments on this issue, therefore, is whether Dr. Layton’s reference in his affidavit to “documentation in my office chart” required the attachment of Johnson’s medical chart to the affidavit in order for the affidavit to be admissible evidentiary support for Dr. Layton and SportsMed’s motion for a summary judgment. An examination of our cases addressing this issue indicates that it did not.
In Welch v. Houston County Hospital Board, 502 So.2d 340 (Ala.1987), this Court noted:
“In Oliver v. Brock, [342 So.2d 1, 4-5 (Ala.1976) ], this Court held as follows:
“ ‘Mrs. Oliver contends in her affidavit that she has reviewed the chart prepared by the defendant physicians stating the names of the doctors who treated her daughter. She says she has read on the “discharge summary” that Dr. Brock was consulted and assisted in prescribing the treatment of her daughter. However, that document is not made a part of the record. [Ala. R. Civ. P.] 56(e) requires that sworn or certified copies of all papers or parts thereof referred to in [answers to interrogatories or depositions] (in support of or in opposition to a motion for summary judgment) shall be attached thereto or served therewith.
“ ‘ “... This means that if written documents are relied upon they actually must be exhibited; [answers to interrogatories or depositions] that purport to describe a document’s substance or an interpretation of its contents are insufficient. ...” Wright & Miller, Federal Practice and Procedure: Civil § 2722.’”
502 So.2d at 343 (emphasis omitted; emphasis added). Thus, this Court on two separate occasions has endorsed the interpretation in Wright and Miller’s treatise[2] *1200 of the document-attachment requirement in Rule 56(e) that if the documents referred to are relied upon by the affiant, then they must be attached to the affidavit. Application of the rule in subsequent cases bears out this interpretation.
In Ex parte Head, 572 So.2d 1276 (Ala.1990), this Court stated, in pertinent part:
“Strauss’s testimony regarding the relationships among the defendants, purportedly made ‘from personal knowledge’ gained from the records of the probate court, does not comply with the requirements of Rule 56(e) and, therefore, is inadmissible in support of Thistle’s motion for summary judgment. Despite Rule 56(e)’s mandate that affidavit testimony ‘set forth such facts as would be admissible in evidence,’ no copies of the probate records from which Strauss gained her ‘personal knowledge’ were provided with Strauss’s affidavit in support of her allegations regarding the defendants. The total absence of copies of the probate records referred to by Strauss rendered inadmissible her statements based on these documents.”
572 So.2d at 1281 (emphasis added). In Head, the affiant relied upon probate-court records for her “personal knowledge” of the relationship among the defendants, but she failed to attach the probate-court records to her affidavit, rendering the affidavit inadmissible. In contrast, Dr. Layton relied upon his personal knowledge of the treatment he provided to Johnson for his opinion as to the standard of care he rendered.
In Pettigrew v. LeRoy F. Harris, M.D., P.C., 681 So.2d 839 (Ala.1993), this Court explained:
“Dr. Harris also moved to strike Dr. Musher’s affidavit on the ground that the facts on which an expert bases his opinion must be facts that are in evidence. Dr. Harris argued that, because the medical records on which Dr. Musher’s opinion were based were not introduced into evidence, they are inadmissible hearsay and, therefore, that the opinion relying on them is also inadmissible. Although the trial judge granted the motions to strike these affidavits, he gave the Pettigrews additional opportunities to respond appropriately to the motion for summary judgment filed by Dr. Harris.
“The issue before this Court is whether the trial court committed reversible error by granting Dr. Harris’s motion to strike directed towards the material filed in opposition to Dr. Harris’s pending motion for summary judgment. More specifically, the Pettigrews argue that Dr. Musher’s affidavit should not have been stricken, because, they say, Ala. R. Civ. P. 56(e) requires only that an expert opinion be based on evidence that would be admissible at trial, and, they argue, such evidence need not be admitted at the time for the ruling on the motion for summary judgment.
[[Image here]]
“Rule 56(e) governs what must be filed with affidavits in support of, and in opposition to, a motion for summary judgment....
“The Pettigrews focus on the first [requirement] of Rule 56(e). They contend that the hospital records relied upon by Dr. Musher would be admissible at trial, and, therefore, that the affidavit complies with the rule and should be considered in opposition to Dr. Harris’s motion for summary judgment. However, it is the second [requirement] of the rule that is at issue. That sentence is a mandatory provision. That sentence provides that ‘sworn or certified copies of all papers or parts thereof referred to in an *1201 affidavit shall be attached thereto or served therewith.’ ‘The total absence of copies of the [hospital] records referred to by [Dr. Musher] rendered inadmissible [his] statements based on [those] documents.’ Ex parte Head, 572 So.2d 1276, 1281 (Ala.1990).”
681 So.2d at 841 (emphasis omitted). Again, in Pettigrew a doctor failed to attach to an affidavit medical records upon which the affiant expressly and solely relied for his expert opinion.
In a fact situation similar to the one in Pettigrew, this Court reached a similar conclusion. In Waites v. University of Alabama Health Services Foundation, 638 So.2d 838 (Ala.1994), this Court stated:
“The defendants counter Waites’s contentions by arguing that Dr. Kirshenb-aum’s affidavit was defective because, they say, ‘it consisted of opinions based on his review of medical records which were not in evidence, properly authenticated, or attached to or served with the affidavit.’ We agree.
“The testimony of Waites’s expert was proffered in opposition to the defendants’ properly supported Rule 56, [Ala.] R. Civ. P., motion for summary judgment. It was necessary, then, that Dr. Kirshenbaum’s affidavit meet the requirements of Rule 56(e)....
“This Court, in Ex parte Head, 572 So.2d 1276 (Ala.1990), held that ‘the requirements of Rule 56(e) are mandatory.’ Although the Head decision dealt with the provisions of Rule 56(e) requiring that the affidavit ‘be made on personal knowledge’ and that it ‘set forth such facts as would be admissible in evidence,’ our holding that the requirements of Rule 56(e) are mandatory certainly can not be limited to those two requirements. Indeed, the two further requirements — that the affidavit ‘show affirmatively that the affiant is competent to testify to the matter stated therein’ and that ‘[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith’ — are no less critical in testing the propriety of an affidavit in support of, or in opposition to, a summary judgment motion.
“We hold, therefore, that because no medical records were attached to or served with the affidavit of Dr. Kir-shenbaum, the affidavit was properly disregarded by the trial court.”
638 So.2d at 842 (emphasis added).
The decisions from Welch, Head, Pettigrew, and Waites demonstrate that an affi-ant must submit with his or her affidavit documents that he or she has relied upon in rendering the opinion expressed in the affidavit. As indicated, a plain reading of Dr. Layton’s affidavit shows that his mention of “documentation in my office chart” was not a statement that he relied upon Johnson’s chart for his opinion that he met the standard of care for orthopedic surgeons in providing medical treatment to Johnson. Therefore, Dr. Layton’s affidavit did not violate the requirement of Rule 56(e), and the trial court did not err in declining to strike his affidavit.
In light of our decision that it was not necessary for Dr. Layton to attach to his affidavit the medical chart at issue, we pretermit discussion of Johnson’s argument that Dr. Layton and SportsMed’s submission of her medical records two days before the hearing on the motion for a summary judgment violated Rule 56(c)(2), Ala. R. Civ. P.
The trial court’s judgment is affirmed.
AFFIRMED.
COBB, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.

. In her first amended complaint, Johnson related that,
”[a]fter Dr. Layton released [Johnson, she] went to another doctor who diagnosed the damage and injury to the ulnar nerve in [Johnson’s] left arm. The new doctor performed an ulnar nerve release/transposition surgical procedure on [Johnson's] left elbow which resulted in dramatic and radical improvement in [Johnson's] left arm and hand and [Johnson’s] regaining the use of her left hand.”

. Now 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure: Civil § 2722, 380-81 (1998).